IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 24, 2024

**STATE OF TENNESSEE v. SHOSHANNA CABANTING**

**Appeal from the Criminal Court for Hancock County**
**No. 21CR072      Alex E. Pearson, Judge**

_____

**No. E2023-00562-CCA-R3-CD**

_____

A Hancock County Jury convicted the Defendant, Shoshanna Cabanting, of vandalism of property valued at $1,000 or less, a Class A misdemeanor, in violation of Tennessee Code Annotated section 39-14-408(b)(1). The trial court imposed a sentence of eleven months and twenty-nine days which was suspended after service of thirty days in jail. On appeal, the Defendant argues that the trial court erred in imposing the thirty-day term of confinement because it failed to consider the purposes and principles of the Sentencing Act. See Tenn. Code Ann. § 40-35-103(1)(A)-(C). Upon our review, we reverse the judgment of the trial court and remand for a limited resentencing hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed;**
**and Remanded for Resentencing**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JILL BARTEE AYERS, JJ., joined.

Kendall Stivers Jones, Assistant Public Defender – Appellate Division (on appeal); Todd Estep, District Public Defender; Roland Cowden, Assistant District Public Defender (at trial), for the appellant, Shoshanna Cabanting.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Bradley R. Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

As relevant to the issue presented in this appeal, the proof at the Defendant's January 18, 2023 trial established that on August 28, 2021, three friends, Dennis Barnett, Billy Ray

Collins, and Jamie Davis, took their four-wheel all-terrain vehicles ("ATVs") out for a ride in the mountains of Hancock County, Tennessee. Barnett testified that he, Collins, and Davis were on their way home and rode past the Defendant's driveway when the Defendant "popped right up in front of [Barnett's ATV]." Barnett did not see the Defendant until he "got right up to her," slammed on his brakes, and turned to avoid running over her. This caused his ATV to get stuck on "[a] big ole boulder" on the Defendant's property. As Barnett attempted to pull the ATV from the boulder, the Defendant started "beating on" one of his taillights with a black object until the taillight shattered.

The other men in the group did not see Barnett's ATV get stuck on the boulder and were not present for the initial altercation between Barnett and the Defendant. Eventually, the men returned to discover Barnett attempting to pry his ATV from the boulder. The Defendant then turned her attention to the other men and proceeded to shatter the taillights on Collins' ATV. Hancock County Sheriff's Deputies Logan Parks and Christian Sloan arrived within twenty minutes. Although Barnett insisted at trial that he did not ride his ATV onto the Defendant's property, he agreed that in his statement to police that night he said the boulder his ATV was stuck on was on the Defendant's property. Barnett sought $30 in restitution for the cost of his broken taillight. Collins and Davis testified consistently with the testimony of Barnett. Collins confirmed that the Defendant "beat[] on" his ATV and "busted" his taillight. Collins estimated the damage to repair the taillight was a "few hundred dollars." Davis testified that he "was just sitting there" as he watched the Defendant "take the butt end of a pistol and beat [Barnett's and Collins'] taillights out."

The Defendant testified that she first encountered Barnett, Collins, and Davis two miles from her home when she was out for her evening walk. She claimed she had done nothing to provoke the group; however, they circled around her with their ATVs and taunted and slung gravel at her. She said the group tormented her for two hours and blocked the driveway to her home. Before the police arrived, Barnett hit the Defendant twice with his ATV. She said Barnett rode backwards, went midair, rammed into her backside, and got stuck on the rocks at the end of her driveway. The Defendant "swatted back" at Barnett's ATV to defend herself, smashing his taillights with her cellphone, which broke during the altercation. When she tried to get onto her driveway, Collins attempted to block it and run over her; however, his ATV tipped over and wrecked. Meanwhile, Barnett revved his engine repeatedly trying to get free from the boulder. When he finally got free, he accelerated forward, deliberately hitting the Defendant a second time. He tried to hit the Defendant a third time but got stuck in more boulders, allowing the Defendant to get safely behind the gate to her driveway.

The Defendant testified that she recorded the rest of the encounter with a second unbroken cellphone. The video depicts the Defendant walking in and out of the gate on her driveway as she traded insults with the men. About two-and-a-half minutes into the

video, Collins claimed that "every cop in [Hancock] county knows [the Defendant] by name, [and] knows [she] pulls guns on everybody." Collins also alleged that the Defendant had a reputation of engaging in such behavior for many years, remarking that "it's happened since [he was] four years old," and that it happened "just the other day."

According to the Defendant, she never threatened the group of men and did not have a firearm on her at any point during the two-hour ordeal. She claimed that Barnett and Collins were on her property when they tried to hit her because the entire fifteen-foot space between the end of her driveway and the roadway where the altercation took place was her property. She also testified that she sustained injuries during the incident and photographs taken the day after the altercation showing the Defendant with a black eye, a large bruise on the back of her leg, and several lacerations on her hands were admitted into evidence.

On cross-examination, the Defendant admitted that police had been previously called to her residence. She stated she did not know why and denied firing a gun above anyone's head.

After both sides presented their closing arguments, the jury convicted the Defendant as charged and assessed a fine of $1,250.

Although the trial court did not hold a sentencing hearing, the court allowed counsel from both sides to make a statement before issuing its sentencing determination. There was no presentence report or other evidence admitted at sentencing, and the parties offered the trial court their respective positions. The State reminded the court that defendants are not entitled to a presumption of minimum sentencing for misdemeanors and recommended "a sentence of 11 months and 29 days . . . suspended to 30 days [of] service in the county jail, [with] the balance [served] on supervised probation," which, it argued, was justified based on the seriousness of the crime. The State argued the jury was not required to fine the Defendant and believed the jury's imposition of a $1,250 fine reflected the severity of the crime and warranted a more serious punishment. Additionally, the State argued that its "evidence in this case was relatively strong and that a minimum sentence . . . would not be appropriate."

Defense counsel began his remarks by referring the trial court to a prior bond revocation hearing in which the court deemed the Defendant's testimony "to be not credible." Defense counsel asked the court to begin the instant sentencing process "with a clean slate." In response, the court assured defense counsel that its sentencing determination would be "based on the facts and evidence presented in this case." Defense counsel then recommended a sentence of supervised probation based on the inconsistencies in the testimony at trial and the severity of the costs and fines the Defendant was required to pay.

- 3 -

Defense counsel specifically argued that misdemeanor defendants are indeed entitled to a presumption of a minimum sentence, and that inconsistencies in the testimony of the State's witnesses meant that a more serious sentence involving a period of incarceration was not warranted. Defense counsel also argued the Defendant was indigent and would struggle to pay the $1,250 fine. Thus, the fine, plus any restitution she would have to pay Barnett and Collins, would be a severe enough punishment for her actions. Additionally, defense counsel argued a jail sentence of thirty days, though not long compared to sentences for other crimes, would be very long for someone like the Defendant who is not "inured to incarceration." Such a sentence "would feel like [the court was] punishing [the Defendant] for going to trial and not just knuckling under and accepting [guilt.]"

Before sentencing the Defendant, the trial court engaged in an extensive examination of the evidence presented at trial. The court determined that "inconsistencies" in testimony were to be expected, that the Defendant's testimony at trial was not credible, and that the cellphone video from the Defendant's phone corroborated the testimony of the group of men. In determining the Defendant's sentence, the court reasoned that "[thirty] days incarceration is the appropriate sentence" because it "properly balances the risk to the community as well as the — what I believe to be false testimony that was introduced in court here today" by the Defendant, especially compared to the credibility of the other witnesses. Accordingly, the Defendant was sentenced to eleven months, twenty-nine days of probation with thirty days of jailtime. The Defendant filed a timely notice of appeal, and this case is properly before this court for review.

## ANALYSIS

The sole issue presented for our review is whether the trial court erred in ordering the Defendant to serve thirty days in jail. We review this issue under the following well-established legal framework. A trial court's sentencing decisions are reviewed for abuse of discretion, with a presumption of reasonableness granted to within-range sentences that reflect a proper application of the purposes and principles of sentencing. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). An abuse of discretion standard, accompanied by a presumption of reasonableness, also applies to "questions related to probation or any other alternative sentence." State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). "Reviewing courts will find an abuse of discretion only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." State v. Herron, 461 S.W.3d 890, 904 (Tenn. 2015) (citations omitted) (internal quotation marks omitted).

The Defendant was convicted of misdemeanor vandalism, which is accomplished when the perpetrator knowingly "[c]auses damage to or the destruction of any real or personal property of another . . . knowing that the person does not have the owner's effective consent." Tenn. Code Ann. § 39-14-408(b)(1). Although the Tennessee Supreme Court has not specifically held whether the <u>Bise</u> standard of review applies to misdemeanor sentencing, our supreme court has held that "the abuse of discretion standard of appellate review accompanied by a presumption of reasonableness applies to all sentencing decisions." <u>State v. King</u>, 432 S.W.3d 316, 324 (Tenn. 2014) (citing <u>State v. Pollard</u>, 432 S.W.3d 851, 864 (Tenn. 2013)). Moreover, this court has repeatedly applied the <u>Bise</u> standard of review to misdemeanor sentencing cases. <u>See</u> <u>e.g.</u>, <u>State v. Hampton</u>, No. W2018-00623-CCA-R3-CD, 2019 WL 1167807, at *12 (Tenn. Crim. App. Mar. 12, 2019); <u>State v. Crode</u>, No. M2021-01371-CCA-R3-CD, 2023 WL 3736157, at *6 n.1 (Tenn. Crim. App. May 31, 2023) (collecting cases in which this court applied the <u>Bise</u> standard to misdemeanor sentences), <u>no perm app. filed</u>. Therefore, we will do the same in this case.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302. The sentencing court is granted considerable latitude in misdemeanor sentencing. <u>State v. Johnson,</u> 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999) (citing <u>State v. Troutman,</u> 979 S.W.2d 271, 273 (Tenn. 1998)). Although a separate sentencing hearing is not mandatory in misdemeanor cases, the sentencing court must provide the defendant with a reasonable opportunity to be heard regarding the length and manner of the sentence. <u>See</u> Tenn. Code Ann. § 40-35-302(a). In sentencing the misdemeanor defendant, the trial court shall fix a percentage of the sentence that the defendant must serve in confinement before being eligible for release into rehabilitative programs. Tenn. Code Ann. § 40-35-302(d). In determining the percentage of the sentence to be served in confinement, the trial court shall consider the sentencing principles, enhancements, and mitigating factors and "shall not impose such percentages arbitrarily." <u>Id.</u>; <u>see also</u> <u>Troutman</u>, 979 S.W.2d at 274. An individual convicted of a misdemeanor has no presumption of entitlement to a minimum sentence. <u>Johnson,</u> 15 S.W.3d at 518 (citing <u>State v. Baker</u>, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997)); <u>State v. Creasy</u>, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). "[T]he misdemeanor sentencing statute merely requires a trial judge to consider enhancement and mitigating factors when calculating the percentage of a misdemeanor sentence to be served in confinement." <u>Troutman,</u> 979 S.W.2d at 274. However, there is no strict requirement that the trial court make findings on the record regarding the percentage of the defendant's sentence to be served in confinement before eligibility for rehabilitative programs. <u>Id.</u>

Misdemeanor sentences must be specific and consistent with the purposes and principles of the Tennessee Criminal Sentencing Reform Act ("the Act"). Tenn. Code Ann. § 40-35-302(b); <u>State v. Cooper</u>, 336 S.W.3d 522, 524 (Tenn. 2011). The purposes and principles of the Act require trial courts to impose a sentence that is "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve

the purposes for which the sentence is imposed." Tenn. Code Ann. §§ 40-35-103(2), (4). Sentences involving confinement should be based on the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Id. § 40-35-103(1)(A)-(C).

The Defendant contends the trial court erred in determining that a thirty-day term of confinement was appropriate under the purposes and principles of sentencing for a misdemeanor offense without threat of injury and only $60 worth of property damage. Specifically, the Defendant argues the record contains no proof (1) that she had a history of criminal conduct, (2) that measures less restrictive than confinement had recently proved unsuccessful, and (3) that confinement was necessary to avoid depreciating the seriousness of the offense or to provide an effective deterrent. She acknowledges that the trial court noted that it would have revoked her bond at a pretrial hearing because she had been "charged with additional offenses" that had yet to be adjudicated; however, she insists the trial court placed no findings on the record reflecting that the Defendant failed to comply with conditions of a sentence involving release at the sentencing hearing. Moreover, she notes that at the motion for a new trial hearing, the trial court commented that these charges had been dismissed. She further insists that the trial court ultimately decided not to revoke her bond after she was charged with another offense before trial. Finally, the Defendant argues there was nothing in the record establishing that the offense required incarceration to avoid depreciating the seriousness of an offense involving "three broken taillights" worth $60 or that incarceration was needed as a deterrence because of a risk to the community.

In response, the State contends the trial court properly imposed a sentence of split confinement. The State acknowledges that the trial court did not "center" its sentencing decision on the Defendant's criminal conduct; however, it maintains that Collins' exclamations from the Defendant's cell phone video on the night of the offense that "every cop in this county knows [the Defendant] by name, [and] knows [she] pulls guns on everybody," that "it's happened since [he was] four years old," and that it happened "just the other day" satisfy this factor. The State submits the Defendant did not deny these

- 6 -

accusations and "admitted that 'officers have been called' to her house on prior occasions at trial." The State also points out that the trial court noted at sentencing that the Defendant was charged with another offense while she was released on bond, which the State argues shows that measures less restrictive than confinement have unsuccessfully been applied to the Defendant factor. See State v. Sexton, No. E2006-01471-CCA-R3-CD, 2007 WL 596415, at *5 (Tenn. Crim. App. Feb. 27, 2007). Finally, the State focuses on the trial court's determination that the Defendant was not a credible witness and argues, based on State v. Jenkins, 733 S.W.2d 528, 534-36 (Tenn. Crim. App. 1987), that a defendant's untruthfulness can be the basis for a denial of probation.

The record shows that in sentencing the Defendant, the trial court initially engaged in a lengthy discussion concerning the inconsistencies in the proof at trial, and stated, in relevant part:

> I don't find [the Defendant's] testimony, in this case, to be credible, independent of any other information that was introduced in a bond hearing. And it's entirely possible that somebody can make false statements or inaccurate statements in one hearing and be accurate in another one. But in this particular situation, I just don't see it.

The trial court also rejected the Defendant's arguments that the group of men were conspiring against the Defendant, and noted, in pertinent part, as follows:

> I mean, now, if this was a case in which a substantial amount of money was at stake or something, maybe, but this case hardly is a blip on the radar in most people's lives. It's hardly a blip on the radar in the officer's mind. It's hardly a blip on the radar in the lives of the three people. In fact, the only person that this case is of any significant consequence to, and rightfully so, is [the Defendant]. And I just can't — I just can't go with the recommendation of the defense counsel for a probatable sentence. I just can't do that.

> The court would note that although she's not been convicted yet, that while on bond, [the Defendant] has been charged with [an] additional offense. That is not adjudicated, but certainly, unless if the court is to buy this additional grand conspiracy that more people are out conspiring, that doesn't even involve these individuals. I did hear a little bit of the testimony about it and I did note that I saw some pictures of some injuries associated with that particular incident that did cause the court more concern and that's the reason I didn't revoke the bond at that particular time. I thought [the Defendant] had raised sufficient concerns and I had no idea what the proof would be in

this case. Had the proof been in the other case what it is in this case, I would have revoked the bond at the time of the bond hearing.

So I come up to sum all that up and it's I think — I think that this is probably the — maybe the second or third time that I have agreed with Attorney General Jones' assessment of the case, and I do again this time. I find that 30 days incarceration is the appropriate sentence. I think that properly balances the risk to the community as well as the — what I believe to be false testimony that was introduced in court here today . . . .

We agree with the Defendant and conclude that the trial court failed to consider the purposes and principles of sentencing as required by Tennessee Code Annotated section 40-35-103(1)(A)-(C). Because the record does not establish that the trial court considered the appropriate factors in this case, we reverse the judgment of the trial court and remand the case for a hearing limited to consideration of this issue.

## CONCLUSION

Based on the above reasoning and authority, we reverse the judgment of the trial court and remand the case for a limited hearing to consider the purposes and principles of sentencing as required by Tennessee Code Annotated section 40-35-103(1)(A)-(C).

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE